SCHLEIF, Appellant, vs. HONECK and another, Respondents.*

*September 10—October 22, 1946.*

---

* Motion for rehearing denied, with $25 costs, on December 18, 1946.

*John E. O'Brien* of Fond du Lac, for the appellant.

For the respondents there was a brief by *Dougherty, Arnold & Kivett,* and oral argument by *Suel O. Arnold* and *Harlin J. Hayes,* all of Milwaukee.

ROSENBERRY, C. J.    On the 7th day of August, 1943, one Meyer, the owner of a threshing machine and farm tractor, was engaged in threshing on the farm of the deceased husband of the plaintiff, Fred Schleif, who will be hereinafter referred to as the "deceased."    The road in front of the Schleif farm runs in a northerly and southerly direction, and on the day in question the threshing machine hauled by a farm tractor was proceeding in a southerly direction from the Schleif farm to the Probst farm, which is located to the south.    Between the two farms the road traverses a high hill.    A red flag had been placed at the crest of the hill to warn travelers of the ap-

proach to the threshing operations. The tractor was being driven by the owner. The deceased was standing on the pole or tongue which connected the tractor to the separator. The deceased had one foot upon the pole and the other on the platform at the back of the tractor. As the deceased and Meyer reached the crest of the hill, they saw coming north from the south a road tractor and semitrailer driven by Honeck which carried no load. As Honeck was passing the farm tractor driven by Meyer, he saw Meyer and Schleif situated as already described. The tongue upon which Schleif was standing was about eighteen inches from the ground, the platform a little higher. The threshing outfit was moving very slowly,—no faster than a man would walk. As the two vehicles were passing, Honeck claims that he saw the deceased step or jump down from the position in which he had been riding, and as he saw this movement he immediately applied the hydraulic brakes on the road tractor, thereby locking the wheels. Meyer did not see the deceased get down from his position on the tongue, saw no contact between the semitrailer and the deceased, but heard a noise that sounded like a bounce or clap of the hands. Honeck testified that he felt something hit when he passed the threshing machine. After he dismounted from the road tractor, he examined the side of the grain separator. He found no evidence of a blow on the separator. Honeck saw the body of the deceased lying on the west side of the road about three feet from the shoulder on the black-top. He also saw the marks spoken of by various witnesses,—marks made by the nails in the shoes of the deceased. These marks were at or about the center of the road. He moved his tractor and semitrailer from the place where it stopped so as to open up the road for traffic.

The deceased sustained a broken neck and a fracture of the back part of his skull and died almost instantly.

In her complaint the plaintiff charges the defendant—

with negligence as to (a) failure to keep a proper lookout; (b) improper and illegal speed; (c) improper control and manage-

ment; (d) violation of sec. 85.56, Wisconsin statutes; (e) violation of sec. 85.61, failing to provide the wheels of the trailer with suitable fenders; (f), (g), (h) violation of secs. 85.63, 85.65, and 85.66; (i) negligence in the operation of the vehicle so connected; and (j) negligence of the defendant in failing to display a red flag on the skeleton trailer.

Upon this appeal the plaintiff assigns as errors the failure of the court to submit the matter of violation of the statutes to the jury. This leads us to a consideration of the special verdict. The jury found that the defendant was not negligent with respect to his line of travel, in respect to control and management, in operating a truck and semitrailer upon the highway without having the semitrailer properly attached to the propelling vehicle. The jury found in response to question 3, that the deceased was negligent in respect to lookout, in respect to invading the right of way of the defendant, and that his injuries were a natural result of negligence on his part.

We find no evidence from which the jury would be warranted in finding that there was any violation of secs. 85.63, 85.65, and 85.66, Stats. We do not consider whether the evidence sustains the finding with respect to the negligence of the deceased. The jury having found that the defendant was not negligent, the question of the negligence of the deceased becomes wholly immaterial.

The plaintiff argues that the evidence did not support the jury's answer to question 3, relating to the negligence of the defendant as to speed. There is nothing in the record to indicate that the defendant was traveling at an unlawful rate of speed, nor is there anything in the record to indicate that the speed of the defendant's vehicle in any way contributed to the deceased's injury.

As a matter of fact, the reason why the deceased, with defendant's truck in plain view, left a place of comparative safety and came in contact with some object that killed him, or in what manner the blow which broke his neck and crushed the back of his skull was inflicted, will remain an insoluble

mystery. Many guesses and speculations might be indulged in, but the only direct evidence is that of the defendant that he saw the deceased stepping down from the place on the tongue and platform; the marks on the pavement which were supposed to be made by the shoes of the deceased, and the body lying on the west side of the highway, are the only facts positively known with reference to the movement of the deceased after he left his stand on the tongue and platform.

One witness testified that there was a bunk extending east and west over the rear axle of the trailer which projected about six inches beyond the wheel. The witness examined the bunk and found on the projecting end,—

"it looked like sort of a ooze or wetness that was not just what we would call just blood, but it was wet, and it wasn't raining that day, and so you couldn't determine that it was blood."

The wetness was on the front side of the bunk.

A physician examined the body of the deceased before it was moved from the place where it lay on the black-top. Although the body was lying face down and the physician had it turned over so he could examine it, he gave no testimony indicating the presence of blood or any other damp substance. There is no evidence in the record from which the jury would be warranted in finding that the end of the bunk came in contact with the head of the deceased.

Error is assigned because the court gave an instruction appropriate to an emergency as to the defendant and denied such an instruction as to the deceased. There is not a syllable of testimony in the case that indicates that the deceased acted because of any emergency. Such emergency, if any there was, was caused by the acts of the deceased. If the deceased had remained where he was standing on the platform and tongue, there would have been no accident.

Error is also assigned because the court refused to receive a report made by a witness who arrived some time after the

accident, which upon its face showed that it was based upon statements made to him and therefore not admissible. It was a statement of fact in part and in part a statement of conclusions drawn by the witness from the statements of others.

Error is assigned because the defendant was not required to have the vehicle driven by him present at the place of trial so that it could be examined. Whether the motion of the plaintiff asking that the defendant be required to produce the vehicle should be granted was a matter within the discretion of the trial court. The trial was begun on the 26th day of November, 1945. Upon the trial the defendant testified that he had disposed of the trailer about a year and a half ago. The accident occurred on the 7th day of August, 1943. We are unable to find any abuse of discretion on the part of the trial court in denying plaintiff's motion.

Other errors were assigned which, in view of the state of the record, it is not necessary to discuss.

*By the Court.*—Judgment affirmed.